IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FAITH REGIONAL HEALTH SERVICES,<br><br>      Plaintiff,<br><br>vs.<br><br>IRONSHORE INDEMNITY, INC., and UMR, INC.,<br><br>      Defendants. | 8:20CV444<br><br>ORDER |

      This matter is before the Court on Plaintiff's Motion to Strike Expert Designation. ([Filing No. 101](#).) Defendant UMR, Inc. has joined in the motion. ([Filing No. 107](#).) For the reasons explained below, the motion will be granted.

## BACKGROUND

      Plaintiff is the sponsor and administrator of a self-funded health benefit plan (the "Plan"). Plaintiff entered into an agreement with Defendant UMR, Inc. ("UMR") in which UMR was appointed as fiduciary of the Plan with respect to performing benefit determinations and directing payment for medical services provided to Plan participants and beneficiaries. Plaintiff also executed a stop loss insurance policy with Defendant Ironshore Indemnity, Inc. ("Ironshore").

      This dispute arises out of payments the Plan made for the medical care of G.F., whose parent participated in the Plan. G.F. received medical treatment at Children's Hospital and Medical Center in Omaha, Nebraska, at a cost of approximately $5.5 million. UMR determined that $4,622,448.57 was payable under the Plan's terms and network provider agreements and directed the Plan to make payment in that amount, which the Plan did.

      UMR then submitted a claim to Ironshore under the stop loss policy for reimbursement. Ironshore denied reimbursement of $2,209,183.79 based on audits performed by Integrity Claim Solutions, Inc. ("Integrity"), a cost-containment vendor Ironshore engaged for the G.F. claim. Integrity found that the denied charges were inconsistent with CMS billing and coding requirements and that some prescribed drugs and therapies fell under an exclusion for experimental and investigative treatment.

Plaintiff filed this suit against Ironshore and UMR seeking $2,209,183.79. Plaintiff alleges Ironshore breached the stop loss policy by failing to reimburse the full amount of the G.F. claim over the $170,000 deductible. Plaintiff alternatively maintains that if Ironshore's decision regarding the claim was correct, UMR breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109 & 1132(a)(2), by failing to accurately process the claim.

UMR asserted a crossclaim against Ironshore, alleging that Ironshore breached a separate contract between them by failing to accept the negotiated in-network discount in place between UMR and Children's Hospital, and that Ironshore wrongfully retained Integrity to audit the claim. ([Filing No. 8](Filing No. 8).) Plaintiff amended its Complaint to raise a similar breach of contract claim, as a third-party beneficiary, in reliance on Ironshore's breach of the agreement between UMR and Ironshore.

On February 3, 2021, the Court entered a progression order setting deadlines for expert witness disclosures. Plaintiff was given until January 18, 2022 to provide expert witness disclosures. Defendants' expert witness disclosure deadline was set as February 18, 2022. The rebuttal witness disclosure deadline was set as March 1, 2022. ([Filing No. 20](Filing No. 20).) The progression order was amended on October 26, 2021, and then again on November 2, 2021. (Filing Nos. 55, 60.) These amendments extended the expert witness disclosure deadlines. Plaintiff's deadline was extended to May 18, 2022. Defendants' deadline was extended to June 20, 2022. The rebuttal deadline was extended to July 29, 2022.

Plaintiff disclosed its experts and their reports on May 17, 2022. ([Filing No. 78](Filing No. 78).) Plaintiff's expert witnesses include: (1) Dr. Matthew Dennis, G.F.'s treating pediatric pulmonologist, who will opine that the administered treatments and drugs were not experimental or investigative; (2) Lynn Sanne, Children's Hospital's Chief Revenue Officer, who will opine that the charges were billed in accordance with CMS rules and the hospital's standard practices; and (3) Mary Meysenburg, a coding specialist and former Nebraska Methodist Hospital employee, who will provide opinions disagreeing with Integrity's conclusions.

After Plaintiff's disclosures, the progression order was amended again to give Ironshore and UMR until August 1, 2022 to provide expert disclosures.[1] (Filing No. 84.) The rebuttal expert disclosure deadline was also extended to September 1, 2022. On August 1, 2022, UMR disclosed the following experts: (1) Attorney William Hargens, to testify regarding damages on the cross-claim; (2) Dr. Brian Kennedy, UMR's Medical Director, to testify as to the standard of care regarding treatments given to G.F.; and (3) UMR's Operations Manager, Jodi Kurtzweil, to testify regarding the review, auditing, processing, and payment of G.F.'s claim. (Filing No. 94.) On August 1, 2022, Ironshore disclosed two experts: (1) Dr. T. Bruce Ferrara, a neonatologist who will testify about the treatments Ironshore denied as experimental and investigational and (2) John Nigro, the past president of Integrity responsible for the audits leading to the denial of the claim. (Filing No. 95.)

On August 26, 2022, UMR served a rebuttal expert report from Dr. Kennedy, which responded to the opinions of Ironshore's expert, Dr. Ferrara. (Filing No. 98.) On September 1, 2022—the rebuttal witness disclosure deadline—Ironshore disclosed Jessica Schmor ("Schmor") of Allegiant Experts. Schmor was identified "to testify in rebuttal to [Sanne] and [Meysenburg] regarding their disagreements with the audit findings of [Integrity]." (Filing No. 104.)

## DISCUSSION

Plaintiff and UMR request that the Court strike Ironshore's designation of Schmor as an expert witness and preclude her from offering testimony. They contend Schmor is a primary, as opposed to rebuttal witness, who intends to provide opinions related to Ironshore's reasoning for its denial of a portion of the stop-loss claim. Plaintiff and UMR maintain that because Schmor is not a rebuttal witness, Ironshore's disclosure of her on September 1, 2022 was untimely under the progression order.

"Rebuttal is a term of art, denoting evidence introduced by a [p]laintiff to meet new facts brought out in his opponent's case in chief." *Morgan v. Com. Union Assur. Companies*, 606 F.2d

---

[1] The deposition deadline was set as September 15, 2022. The summary judgment and Daubert motion deadlines were set as November 1, 2022, but were later extended to January 13, 2023. (Filing No. 84.) Trial is scheduled to commence on June 12, 2023.

554, 555 (5th Cir. 1979). "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 759 (8th Cir. 2006) (quoting *United States v. Lamoreaux,* 422 F.3d 750, 755 (8th Cir. 2005)). "As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo,* 457 F.3d at 759. "[A] defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a rebuttal witness, or anything close to one." *Morgan,* 606 F.2d at 555. *See also Faigin v. Kelly,* 184 F.3d 67, 85 (1st Cir. 1999) ("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case.").

Having reviewed the matter, the Court finds that Schmor is not a rebuttal expert and was therefore untimely disclosed under the progression order. According to Ironshore's rebuttal expert disclosure, Schmor was disclosed to testify in rebuttal to Plaintiffs' experts Sanne and Meysenburg "regarding their disagreements with the audit findings of Integrity." (Filing No. 104.) Sanne and Meysenburg were disclosed by Plaintiff on May 17, 2022. Thus, Ironshore was aware of these individuals and their opinions at the time it served its expert disclosures on August 1, 2022. Nothing changed between the time of the defendants' expert disclosures and the rebuttal expert witness disclosure deadline. Plaintiff did not identify additional expert witnesses and its deadline to do so had passed. By the time of the rebuttal disclosure deadline on September 1, 2022, there was nothing new from Plaintiff for Ironshore to rebut. It is apparent to the Court that Schmor is not a rebuttal witness because she was only disclosed to contradict *expected* and *anticipated* portions of Plaintiff's case-in-chief.

Ironshore had ample opportunity to identify expert witnesses by the defendants' deadline to do so. That deadline had been extended several times. Importantly, by that deadline, Ironshore was able to disclose Nigro as an expert witness to testify on Ironshore's behalf regarding the audits leading to the denial of the claim. However, Ironshore made the strategic decision to wait to disclose Schmor, whose testimony's very purpose was to address Sanne and Meysenburg's opinions regarding the audit and provide cumulative support for Nigro's audit findings. Waiting for the rebuttal deadline to disclose Schmor effectively, and unfairly, prevented Plaintiff and UMR from challenging Schmor's testimony.

4

Ironshore contends that even if the Court finds that Schmor is not a rebuttal expert, the proper remedy is to allow Plaintiff and UMR an opportunity to supplement their expert disclosures by filing a "sur-rebuttal" to Schmor's report. As explained above, Schmor is not a rebuttal expert and the defendants' expert disclosure deadline passed months ago. Moreover, the progression order does not contemplate sur-rebuttal witnesses. Therefore, Ironshore's proposal to allow Schmor's report and permit Plaintiff and UMR to file additional reports amounts to a request to modify the progression order. Federal Rule of Civil Procedure 16 allows for modifying scheduling orders "only for good cause and with the judge's consent." Fed. R. Civ. P. 16. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Gilliland v. Harley-Davidson Motor Co. Group, LLC,* No. 8:12CV384, 2015 WL 1650256, *3 (D. Neb. April 14, 2015) (quotation omitted). Although prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, "the court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Id*.

The Court finds there is no good cause to modify the progression order. Ironshore was not diligent in attempting to meet the order's requirements. Ironshore knew the identity and opinions of Plaintiff's experts since May 17, 2021. Ironshore was aware Sanne and Meysenburg would offer testimony regarding the audit and even identified Nigro to provide expert testimony on its behalf regarding the audit. Despite this, Ironshore waited until the rebuttal expert deadline to disclose Schmor, who is meant to provide more testimony about the audit. This disclosure happened approximately two weeks before the September 15, 2022 deposition deadline.[2] Not only is there no good cause, but modification of the progression order at this time would prejudice both Plaintiff and UMR. Trial is scheduled to commence on June 12, 2023 and allowing a sur-rebuttal disclosure would increase costs and potentially delay adjudication of this suit.

Ironshore explains its error in waiting to disclose Schmor until the rebuttal deadline is justifiable based on its interpretation of the progression order. Ironshore contends it interpreted the progression order as reserving the rebuttal deadline for all parties, not just Plaintiff. Frankly, Ironshore's interpretation of the progression order is faulty and misconstrues the entire purpose of rebuttal testimony. Plaintiff disclosed Sanne and Meysenburg on May 17, 2022. Then, on August

---

[2] After the present motion was filed, the deposition deadline was extended to December 15, 2022. (Filing No. 115.)

5

1, 2022, Ironshore disclosed its primary experts, including Nigro whose testimony, like that of Sanne and Meysenburg, relates to the audit issue. Plaintiff did not disclose any other experts between the defendants' expert disclosure deadline and the rebuttal disclosure deadline. Thus, as of September 1, 2022, there was nothing new from Plaintiff for Ironshore to rebut and no need for Ironshore to identify rebuttal experts. Ironshore's interpretation of the progression order would prevent fair case progression by allowing a party to present new expert testimony without providing time for the other party to refute the factual assertions and opinions of that expert witness.[3] There is no justification for Ironshore's failure to disclose Schmor by the August 1, 2022 disclosure deadline, and Ironshore's failure to do so was prejudicial to the other parties.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike Expert Designation (Filing No. 101) is granted. UMR's Joinder of Plaintiff's Motion to Strike (Filing No. 107) is granted.

Dated this 7th day of February, 2023.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

---

[3] Ironshore also argues the normal sequence of expert disclosures is inappropriate given the complexity of the case due to UMR's crossclaim and Plaintiff's related third-party beneficiary claim. However, if a modified progression schedule was necessary due to this purported complexity, Ironshore could have filed a motion requesting changes to the progression order on that basis. Further, if Ironshore was confused by the progression order, it could have sought clarification from the Court. Ironshore also contends it should be permitted to identify rebuttal experts because it stated in its expert disclosures that it reserved the right "to call any rebuttal expert witnesses in accordance with the Court's Third Amended Final Progression Order." (Filing No. 104.) The progression order does not contemplate Ironshore's disclosure of rebuttal expert witnesses as to Plaintiff. Therefore, Ironshore's "reservation" in its expert disclosure amounts to an attempt to modify the progression order without the Court's approval.